### WERNETTE *v.* BRADFIELD.

1. TRIAL — INSTRUCTIONS — FRAUD—INTENT — CHARGE AS WHOLE WITHOUT ERROR.

   In an action for damages alleged by plaintiff to have been caused to him by acts of defendants, done with fraudulent intent, which resulted in wrecking a corporation of which plaintiff had been president until deposed by defendants, where the acts were innocent of themselves, and the question of intent was very important, the charge, taken as a whole, *held*, to be without error.[1]

2. SAME—SPECIAL QUESTION NOT ARGUMENTATIVE.

   An objection that a special question, requested by defendants, as follows: "Did (defendants) conspire illegally or unwarrantedly to defraud (plaintiff) of any of his part of the company's assets?" is argumentative, is without merit.[2]

3. SAME—REFUSAL OF PROPER SPECIAL QUESTION ERROR—STATUTE MANDATORY.

   Refusal of the trial court to submit a special question, as requested by defendants, which conformed to the requirements of the statute (3 Comp. Laws 1915, § 12611), was

[1]Fraud, 27 C. J. § 219; Trial, 38 Cyc. pp. 1778, 1779; [2]Trial, 38 Cyc. pp. 1909, 1917 (Anno).

reversible error; said statute being mandatory when complied with.[3]

4. SAME—DAMAGES—RULE OF DAMAGES SUBMITTED PROPER WHERE SUPPORTED BY TESTIMONY.

An objection to the rule of damages submitted to the jury, on the ground that the different elements of damages recited were not supported by the proofs is without merit, where the testimony was sufficient, if believed by the jury.[4]

Error to Kent; Brown (William B.), J. Submitted October 22, 1925. (Docket No. 64.) Decided December 22, 1925. Rehearing denied April 6, 1926.

Case by Joseph J. Wernette against William W. Bradfield and another for wrongful and fraudulent management of a corporation. Judgment for plaintiff. Defendants bring error. Reversed.

*William J. Landman* (*James T. McAllister*, of counsel), for appellants.

*Clare J. Hall*, for appellee.

BIRD, J. Plaintiff and defendants were architects and mechanical engineers by profession, and were following their profession in the city of Grand Rapids. In 1913 they organized a small corporation, with capital of $6,000, to carry on their work together. Plaintiff was president of the company. Each one of the parties received a salary. Matters went well for a time and the company had the appearance of being prosperous. In 1916 the company was employed on a large job for the Piqua Handle Company, of Marquette. For reasons that are not material that company became dissatisfied with the work of the engineering company and stated they would deal no further with it, but would intrust the work to plaintiff. Accordingly plaintiff resigned as an employee of

---

[3]Appeal and Error, 4 C. J. § 3012; [4]Fraud, 27 C. J. § 271.

his engineering company and went forward with the work of the Piqua Handle Company. He claims he advised his company of the situation and stated to them that he would turn over to the company what he received on the job and take his regular salary and assume his position as an employee of the company when the job was finished. Out of this move on the part of plaintiff dissensions arose and appeared to increase as the days went by. The business of the company fell off. The corporate prosperity gradually lessened. Then plaintiff was deposed as president. Later the corporate existence was shortened by resolution so that it expired in 1921 with practically no assets. It is the claim of plaintiff that the affairs of the company were conducted in such a way as to wreck the company and to deprive him of his interest therein, and to injure him in his business and professional standing and prestige, and that the acts which accomplished these results were committed by defendants with a fraudulent intent. The defendants, while admitting many of the acts complained of, deny they were done with any fraudulent intent, or with any intent to injure plaintiff professionally or financially. They claim that the failure of the company was due in part to plaintiff's failure to co-operate with them. The trial resulted in a verdict for plaintiff of $5,283.

1. Defendants have assigned a large number of errors on the charge of the court and on its refusal to give certain requests. No errors are assigned on the admission or rejection of testimony. Most of the assignments are eliminated by our view that there was testimony which would carry the case to the jury, and we do not think that the remaining ones are well taken. The trial court covered the case with a very able and elaborate charge. He discussed many phases of the case which he might have omitted, for

the purpose of making clear to the jury what the issues were and what their duty was respecting them.      He said to them:

"Now, under the claims of the parties in this case, there might be said to be one main issue which arises for your consideration, and that question is, Did the defendants unlawfully conceive the fraudulent design of dissipating and appropriating to themselves the assets, business and clients of the Wernette-Bradfield-Mead Company, so as to deprive the plaintiff, Joseph J. Wernette, of his interest therein, and did they then proceed with a series of acts and a course of conduct designed to, and which actually did, achieve such wrongful purpose?

"A common design or purpose by two or more persons may be proved either by direct evidence or by proof of such circumstances as naturally tends to prove it, and which are sufficient in themselves to satisfy an ordinarily prudent man of the existence of a common design.      If two or more persons enter into the execution of a fraudulent design, both are liable for all the damages done, and for the fraudulent acts and statements not only of himself but of all the parties to it, the same as though he had himself done the particular acts or made the particular statements. If you find as a fact in this case that the defendants, Bradfield and Mead, had a common design of accomplishing a wrongful purpose, and that each assisted in some way in furtherance of that purpose, then they both will be liable for any damage that you may find resulting therefrom."

The question of the intent with which defendants did many of the acts was indeed very important.      Most of them, nearly all of them, were acts which were innocent in themselves, but which, if committed with a fixed purpose between defendants to bring about the result of injuring plaintiff in his professional and financial standing, would be actionable.      We think there was evidence which would support either theory, depending upon whom the jury believed.      We think there was no error in the charge, taken as a whole.

2. Defendants requested the following special question should be submitted to the jury:

"Did Bradfield and Mead conspire illegally or unwarrantedly to defraud Wernette of any of his part of the company's assets?"

Our attention has not been called to the reason why the trial court refused to submit this question. Plaintiff's counsel argues that it is argumentative. The statute which authorizes the submission of special questions to the jury is as follows:

"In all cases where an issue of facts is tried before any court of record, the court shall at the request in writing, of the counsel of either party, instruct the jury if they return a general verdict, also to find upon particular questions of facts, respecting which the issue is joined, to be stated in writing, and shall direct a written finding thereon: *Provided,* Such special questions shall not exceed five in number, and shall be each in single, short sentences, readily answered by yes or no. The special verdict, or finding, shall be filed with the clerk, and entered upon the minutes, and when any special finding of fact shall be inconsistent with a general verdict, the former shall control the latter, and the court give judgment accordingly." 3 Comp. Laws 1915, § 12611.

Tested by the restrictions of this statute, we think the proffered question should have been submitted. The question was single, was not unduly long, and was readily answered by "yes" or "no." The question was controlling. Had it been submitted and answered in the negative it would have been inconsistent with the general verdict which the jury returned. We are unable to agree with counsel that it was argumentative. Only three questions were tendered. From the fact that this statute is mandatory when it is complied with (*Tyler* v. *Wright,* 188 Mich. 561), and from the further fact that the question submitted struck directly to the heart of the controversy, we think we

must say that the refusal of the court to submit it was reversible error.

3. Complaint is also made of the rule of damages given to the jury. On the question of damages the court said in part:

"The elements to be considered by you in determining what damages, if any, the plaintiff has sustained, are the monetary value of his interest in the corporation; the fact that he was removed from the office of president, if you find that he was removed unlawfully; the loss, if any, sustained by him to his reputation as an engineer because of the fact that upon his removal as president the defendant, Harry L. Mead, was made president of the corporation; and the loss, if any, sustained by him to his reputation as an engineer in having the corporation dissolved."

The specific objection is that the different elements of damage recited were not supported by the proofs. If the jury believed the testimony of plaintiff and believed his theory was the correct one, this objection is without force. Plaintiff had the right to have his theory of the facts submitted to the jury.

For the error pointed out the judgment will be reversed and a new trial granted, with costs to defendants. Defendants will be permitted to tax for only 50 pages of brief.

McDONALD, C. J., and CLARK, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.